UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| JEREMY ZIELINSKI, TRAVIS HUDSON, BRUCE MOSES, OSCAR NUNEZ, JEAN MARC DESMARAT, and DAVID HAIGH, on behalf of themselves and all others similarly situated,<br><br>       Plaintiffs,<br><br>       v.<br><br>NEW YORK DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION (DOCCS); DOCCS ACTING COMMISSIONER DANIEL F. MARTUSCELLO III, *in his official capacity*; DOCCS SUPERINTENDENT DAVID HOWARD, *in his official capacity*; and DEPUTY SUPERINTENDENT FOR PROGRAM SERVICES DANIELLE GLEBOCKI, *in her official capacity*,<br><br>       Defendants. | | **No.**  9:24-cv-450 (GTS/CFH)<br><br><br>**REQUEST FOR EMERGENCY RELIEF** |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF EMERGENCY MOTION FOR INJUNCTIVE RELIEF UNDER FED. R. CIV. P. 65**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION .................................................................................................. 1

II.    FACTUAL BACKGROUND ................................................................................. 1

III.    PROCEDURAL BACKGROUND......................................................................... 5

IV.    ARGUMENTS AND AUTHORITIES.................................................................. 9

    A.    A Temporary Restraining Order or Preliminary Injunction Is Required to Uphold Plaintiffs' Statutory and Constitutional Rights. ................................................... 10

        1.    Plaintiffs and the Class Are Likely To Succeed on the Merits. ................ 10

    B.    RLUIPA ....................................................................................................... 10

    C.    Section 1983..................................................................................................... 15

        2.    Plaintiffs and the Class Face a Substantial Threat of Immediate and Irreparable Harm for Which There Is No Adequate Remedy at Law....... 15

        3.    Greater Injury Will Result From Denying Injunctive Relief Than From Granting It. ............................................................................................. 16

        4.    Immediate Injunctive Relief Will Not Disserve the Public Interest. ........ 16

        5.    The Security Requirement Should Be Waived. ........................................ 17

    D.    Plaintiffs Respectfully Request Expedited Treatment of Their Complaint. ......... 17

V.    PRAYER FOR RELIEF ...................................................................................... 17

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<small>CASES</small>

*Aguilar v. Decker*,
    482 F. Supp. 3d 139 (S.D.N.Y. 2020)......................................................................10

*Bowens v. Smith*,
    2012 U.S. Dist. LEXIS 183949 (N.D.N.Y. Dec. 7, 2012).......................................15

*Bravo v. Oyas*,
    2010 U.S. Dist. LEXIS 56205 (C.D. Cal. Apr. 28, 2010) .........................................8

*Coronel v. Paul*,
    316 F. Supp. 2d 868 (D. Ariz. 2004) ......................................................................13

*Cutter v. Wilkinson*,
    544 U.S. 709 (2005)................................................................................................11

*Gibson v. Heary*,
    2021 U.S. Dist. LEXIS 41690 (W.D.N.Y. Mar. 5, 2021)........................................11

*Johnson v. Doty*,
    2019 U.S. Dist. LEXIS 83012 (S.D.N.Y. May 16, 2019)...................................12, 13

*Kaufman v. McCaughtry*,
    419 F.3d 678 (7th Cir. 2005) ..................................................................................12

*Kikumura v. Hurley*,
    242 F.3d 950 (10th Cir. 2001) ................................................................................12

*Masterpiece Cakeshop, Ltd. v. Colo. Civ. Rights Comm'n*,
    584 U.S. 617 (2018) (Concurrence, Gorsuch, J.)....................................................12

*McCreary County v. ACLU*,
    545 U.S. 844 (2005)................................................................................................12

*Murphy v. Missouri Dep't of Corrections*,
    372 F.3d 979 (8th Cir.), cert. denied, 125 S. Ct. 501 (2004) .................................14

*Perez v. New York*,
    2020 U.S. Dist. LEXIS 169471 (W.D.N.Y. Sept. 15, 2020) ...................................11

*Rivera v. Dyett*,
    1992 U.S. Dist. LEXIS 13464 (S.D.N.Y. Sep. 9, 1992)..........................................17

*Rivera v. Town of Huntington Hous. Auth.*,
    2012 U.S. Dist. LEXIS 74267 (E.D.N.Y. May 29, 2012) .......................................17

*Ross v. Blake*,
    578 U.S. 632 (2016) ................................................................8, 9

*Salahuddin v. Goord*,
    467 F.3d 263 (2d Cir. 2006) ..................................................13

*Vision for Children, Inc. v. City of Kingston, N.Y.*,
    2017 U.S. Dist. LEXIS 222357 (NDNY June 7, 2017) ..................11

*West v. Atkins*,
    487 U.S. 42 (1988) ................................................................15

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ..................................................................10

**RULES**

Rule 65(c)'s ................................................................................17

Rule 65 of the Federal Rules of Civil Procedure ......................10, 17

**STATUTES**

42 U.S.C. § 1983 ........................................................................10

42 U.S.C. § 2000cc-1 ................................................................11

42 U.S.C. § 2000cc-3(g) ............................................................11

42 U.S.C. § 2000cc-(5)(7)(A) ....................................................11

Religious Land Use And Institutionalized Persons Act ....................7

RLUIPA ..............................................................................passim

Section 1983 ..............................................................................15

**OTHER AUTHORITIES**

First Amendment ....................................................................12, 15

Fourteenth Amendment ..............................................................15

First and Fourteenth Amendments ..............................................15

Both *Bulugh Al-Maram* ..............................................................2

*Bulugh Al-Maram* at 164-66 ......................................................2

*Bulugh Al-Maram* at 165, n.2 ........................................................................................3

*Sahih al-Bukhari* at Vol. 2, Book 18, p. 242-48 .........................................................2

U.S. Constitution.................................................................................................1, 9, 15

## I.     <u>INTRODUCTION</u>

Plaintiffs' request is simple: to practice their sincerely held religious beliefs by observing the April 8, 2024 solar eclipse. This should not be controversial and was previously allowed during the last solar eclipse viewable in New York State, which took place in 2017. It is widely recognized that the solar eclipse is a significant religious event for people of many different faith backgrounds. The New York Department of Corrections and Community Supervision ("DOCCS") is clearly prepared to accommodate this request and could do so easily. Moreover, DOCCS is required—both by statute and the U.S. Constitution—to do so.

But rather than comply with statutory and constitutional mandates, DOCCS has announced a statewide lockdown of all its facilities from 2:00pm to 5:00pm on April 8th and is prohibiting Plaintiffs, and others similarly situated, from congregating and viewing the eclipse. This approach places a substantial burden on Plaintiffs' genuine practice of their religion. Rather than furthering a compelling government interest through the least restrictive means, as they are required to do, DOCCS's eclipse ban does the opposite; it indiscriminately undermines any purported rehabilitative goals of its programs with one broad stroke. This Court should immediately enjoin DOCCS from restricting Plaintiffs', and other similarly situated individuals', free exercise of religion.

## II.     <u>FACTUAL BACKGROUND</u>

On April 8, 2024, a total solar eclipse will pass over portions of New York State, and a partial total eclipse will affect the rest of the state. Declaration of Madeline E. Byrd, dated March 29, 2024 (the "Byrd Decl."), Ex. 1 (Solar Eclipse). As the moon moves in front of the sun, the sky will darken for a few minutes, at a time when it would otherwise be light. *Id.* Totality occurring in New York state is the kind of phenomenon that has not been seen since 1925 and will not be seen

again in New York until 2079.[1] Byrd Decl., Ex. 2 (A Look Back at 1925). For some, this event might simply be another interesting natural phenomenon to admire. But for many, this eclipse is a moment of monumental religious significance that cannot be overlooked or dismissed out of hand.

For example, for many of the Islamic faith, a solar eclipse like the one on April 8th is a special time for prayer. Byrd Decl., Ex. 3 (How Eclipses Feature in Major World Religions). Islam is a monotheistic religion based on the revelations of Allah (God) to the Prophet Muhammad, which were recorded in the Qur'an. Byrd Declaration, Ex. 4 (Britannica Islam Summary). In addition to the Qur'an, the Hadith is another major source of religious law and moral guidance. Byrd Decl., Ex. 5 (Britannica Hadith Summary). The Hadith are the sayings of Muhammad and his companions, and they have been recorded in various collections. *Id.* Because Muhammad is believed to be the messenger of Allah, the Hadith are a very important source of religious guidance and Islamic law. *Id.* One such collection of the Hadith is a book called *Bulugh Al-Maram*. Byrd Decl., Ex. 6 (*Bulugh Al-Maram*). Another is the Sahih al-Bukhari. Byrd Decl., Ex. 7 (*Sahih Bukhari*).

Both *Bulugh Al-Maram* and *Sahih al-Bukhari* record Hadith that suggests a prayer reserved for when there is an eclipse, even if it is during hours where prayer is normally avoided. *Bulugh Al-Maram* at 164-66; *Sahih al-Bukhari* at Vol. 2, Book 18, p. 242-48. According to the Hadith collected in these books, this is the prayer Muhammad prayed when his son Ibrahim died. *Id.* Also according to the Hadith, there was a solar eclipse at that time. *Id.* Because of this, Muslims are urged to say this prayer (called the *Salat al-Kusuf*) and to perform the prayer in a certain manner when there is an eclipse. This includes a "manner of calling" that is not approved "for any other

---

[1] The 2017 eclipse was only a partial eclipse in New York as the path of totality passed south of the state.

prayer except the Eclipse prayer." *Bulugh Al-Maram* at 165, n.2. This prayer is also unique in the number of bows it entails, and it is supposed to be followed with a Khutba (religious talk, or sermon). *Id.* at 165, n.3.

In Christianity, too, the religious significance of the solar eclipse is rooted in a holy text. Byrd Decl., Ex. 8 (A Total Eclipse Is Near). In describing Jesus's crucifixion, the Bible explains a phenomenon that many believe describes a solar eclipse. *Id.*; *see also* Mark 15:33 ("And when the sixth hour had come, there was darkness over the whole land until the ninth hour."). But more than that, many modern Christians have encouraged other followers to gather and observe the eclipse together to worship the God who they believe created the sun and the moon and everything in between. Byrd Decl., Ex. 13 (Upcoming Solar Eclipse).

In Santería, the religious significance of the solar eclipse stems from its historical ties to Yoruba traditional religion. According to the United States Commission on International Religious Freedom, "Santería is a syncretic religion rooted in the religious practices of the Yoruba people, who were brought as slaves to Cuba from the Congo Basin and West Africa, that incorporates elements of Catholicism." Byrd Decl., Ex. 9 (Santería Factsheet). And the Yoruba people have been reported to perform a chant-based ritual during a solar eclipse, in which they sing that the sun has captured the moon but will let it go. Byrd Decl., Ex. 10 (Segla).

And in Atheism, which is guaranteed the same constitutional protections as any other religion, the solar eclipse is a time for gathering and discussion about the natural wonders of the universe. Byrd Decl., Ex. 14 (NPR) (referring to the National Convention of American Atheists hosting a viewing event for the 2017 solar eclipse in Charleston, South Carolina); *id.*, Ex. 11 (Atheist's Convention).

Plaintiffs Travis Hudson, Bruce Moses, Oscar Nunez, Jean Marc Desmarat, David Haigh, and Jeremy Zielinski are incarcerated at Woodbourne Correctional Facility in Sullivan County, New York ("Woodbourne"). All six Plaintiffs practice one of these religions and have expressed their sincerely held religious beliefs in declarations that observing the eclipse is a key part of practicing their faith. *See* Compl. at ¶¶14-32, Exs. C-I to Complaint. All six have asked to congregate in the prison yard to view the eclipse during a time of day that is typically outdoor recreation time. *See* Compl. at ¶¶14-32; Byrd Decl. Ex. 15. And all six have been denied that right. *See* Compl. at ¶¶14-32; Byrd Decl. Ex. 15.

Unfortunately, they are not alone. The Acting Commissioner of DOCCS, Daniel Martuscello, has issued a memorandum that applies to every DOCCS facility and prevents any incarcerated person from going outside to view the eclipse on April 8, 2024 ("Lockdown Memo"), in addition to cancelling visitation for about half of DOCCS' facilities. Byrd Decl., Ex. 12. Notably, DOCCS issued this Lockdown Memo despite the facts that:

- The Deputy Superintendent at Woodbourne had previously granted one Plaintiff, Jeremy Zielinski, the ability to view the eclipse from the yard and receive eclipse glasses that would be returned after the event. Compl. at ¶ 38.

- When New York was experiencing a partial solar eclipse in 2017, incarcerated persons at Sullivan Correctional Facility in New York were permitted to congregate and pray in the prison yard peacefully and without issue. Compl. at ¶ 42.

- The hours of 2:00pm to 5:00pm are normally outdoor recreational hours, where inmates are typically allowed to spend time outside in the prison yard. Compl. at ¶ 43.

4

- DOCCS will order eclipse glasses to protect its employees and any incarcerated individuals with windows, and in fact, acknowledges that it has placed such an order. Compl. at ¶¶ 40-41.

- The yard in any one facility will only be at peak darkness for a few minutes. Compl. at ¶ 4.

- Modern technology allows the facilities to maintain safety and security in those few minutes when the sky is dark, just like they do every night when the sun goes down.

But most importantly, DOCCS issued this Lockdown Memo despite being legally required to allow the people within its control to view the eclipse for sincerely held religious reasons.

Simply put, DOCCS's solar eclipse ban is illegal and an unconstitutional violation of these individuals' sincerely held religious beliefs. DOCCS therefore must be enjoined so that any incarcerated person in New York who sincerely believes that viewing the eclipse is a part of practicing their religion is able to observe the eclipse.

III.  **PROCEDURAL BACKGROUND**[2]

On January 28, 2024, Mr. Zielinski was the first Plaintiff to submit an official request that the solar eclipse be recognized at Woodbourne as a religious event. He was informed two days later, on January 30, 2024, that he would first need to submit an official request to Woodbourne to recognize his religion, atheism, as an official religion. A few weeks later, on February 19, 2024, Mr. Zielinski submitted the request for atheism to be recognized as an official religion.

On March 4, 2024, Mr. Zielinski was notified that a determination could take up to 120 days. He responded that same day, explaining that the nature of his request was time sensitive because the eclipse would be occurring in one month, and 120 days' wait would mean missing the

---

[2] *See* Compl. at ¶¶14-32; Byrd Decl. Ex. 15.

eclipse. The next day, Mr. Zielinski received confirmation from Deputy Superintendent Glebocki that his request had been granted to view the April 8, 2024 solar eclipse. He was also informed that the facility would buy and provide him with solar eclipse viewing glasses for use to watch the eclipse.

A few days later, on March 8, 2024, Mr. Zielinski submitted another request. This time he requested to watch the eclipse *together* with other inmates who hold sincere religious beliefs regarding the importance of the solar eclipse, including the other Plaintiffs. As he explained in this request, the whole point of the event was to gather with others who were similarly interested in the event—not to witness the solar eclipse alone. Mr. Zielinski has yet to receive a response to this request.

On March 11, 2024, DOCCS Acting Commissioner Daniel Martuscello III that the Lockdown Memo that day to all DOCCS facilities, including Woodbourne. The Lockdown Memo ordered that, because of the solar eclipse:

> On April 8, 2024, all facilities will operate on a holiday schedule. ***There will be no incarcerated movement in facilities from 2:00 p.m. to 5:00 p.m. and incarcerated individuals will remain in housing units except for emergency situations.*** For facilities in the path of totality, visitation will be canceled and publicized on the Department web page and social media, visitation at all other facilities will end at 2:00 p.m.

Ex. 12 (emphasis added).

At the same time that it prohibited any incarcerated persons from leaving the housing units to watch the solar eclipse in the prison yard, the Lockdown Memo also acknowledged that "[t]he Department has placed an order to purchase and distribute solar eclipse safety glasses to facilities in the path of totality for the incarcerated population." *Id.* Though one can only speculate as to the reason for this purchase order, it seems that the glasses would be for DOCCS staff or incarcerated individuals who have windows in their housing units.

The day after the Lockdown Memo issued, on March 12, 2024, Mr. Zielinski filed an official incarcerated grievance complaint ("First Eclipse Grievance") alleging that the Lockdown Memo violated his rights under the Religious Land Use And Institutionalized Persons Act ("RLUIPA") by prohibiting him from celebrating the solar eclipse with others, as is necessary for him to practice his sincerely held beliefs as an atheist.

Also that day, Plaintiff Travis Hudson was the next Plaintiff to request permission from the Woodbourne Deputy Superintendent to observe the solar eclipse with Mr. Zielinski. On March 14, 2024, Deputy Superintendent Glebocki denied his request because he is a Baptist, and the solar eclipse is not a recorded holy day for Baptists in the facility's calendar.

That day, Mr. Zielinski filed another grievance, this time in response to Mr. Hudson's denial ("Second Eclipse Grievance"). He again emphasized that refusing to allow other inmates to observe the solar eclipse based on sincerely held religious beliefs violated his rights to practice his faith as an atheist. Mr. Zielinski also implied that the denial violated Mr. Hudson's rights to practice his faith as a Baptist because DOCCS cannot unilaterally decide that any event not included in its own agency calendar as a "holy day" is not otherwise religiously significant and protected by RLUIPA.

Also that same day, Mr. Moses, Mr. Nunez, and Mr. Desmarat became the third, fourth, and fifth Plaintiffs to request permission from the Woodbourne Deputy Superintendent to observe the solar eclipse with Mr. Zielinski and Mr. Hudson. Mr. Moses's request was denied in writing because he is "designated Santeria" and "NYSDOCCS Religious Holy Day Calendar 2024 does not note the viewing of the Solar Eclipse as one of the Santeria Religious Events." Byrd Decl., Ex. 15. Mr. Nunez and Mr. Desmarat also allege that Deputy Superintendent Glebocki denied their

requests for similar reasons, that the solar eclipse is not on the calendar as a holy day for Santeria or Islam.

The next day, on March 15, 2024, Mr. Haigh became the last of the six named Plaintiffs to request authorization to view the solar eclipse on April 8, 2024. Mr. Haigh never received a formal response to his request.

A few days later, on March 18, 2024, Mr. Zielinski received a letter from Superintendent Howard notifying Mr. Zielinski that he had received his March 14, 2024 letter in which Mr. Zielinski had said he was filing a grievance. Superintendent Howard informed Mr. Zielinski that he would "receive a response via the Grievance program." Mr. Zielinski has yet to receive an official response through the Grievance program for either his First or Second Eclipse Grievances. And in Plaintiffs' experience, it usually takes more than a year to receive a response through the Grievance program. Thus, the April 8, 2024 solar eclipse will be long over by the time Mr. Zielinski receives a response through the Grievance program. Mr. Zielinski has therefore exhausted the administrative remedies available to him. *See Ross v. Blake*, 578 U.S. 632, 643 (2016) ("[A]n administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to inmates.").

Moreover, though it is not the Plaintiffs' burden to prove administrative exhaustion at the pleading stage[3], for all the Plaintiffs, the administrative remedies available to them have been exhausted because there is nothing left to do. The Lockdown Memo comes from the highest level

---

[3] *E.g.*, *Bravo v. Oyas*, 2010 U.S. Dist. LEXIS 56205, at *10-11 (C.D. Cal. Apr. 28, 2010) ("The exhaustion requirement under the PLRA does not impose a pleading requirement on the plaintiff. Rather, it creates an affirmative defense that the defendants have the burden of raising and proving.").

of DOCCS and is effectively a blanket denial of any pending Grievances or future Grievances on the topic. It constitutes a final decision on the matter, and there are no more administrative options available to Plaintiffs that could reverse the Lockdown Memo.[4] *Ross*, 578 U.S. at 643 ("[W]here the relevant administrative procedure lacks authority to provide any relief, the inmate has nothing to exhaust.") (internal quotations omitted). For these reasons, the Plaintiffs have exhausted their administrative remedies.

## IV.   ARGUMENTS AND AUTHORITIES

DOCCS' answer to Plaintiffs' demonstrated religious interest in the solar eclipse was to issue a statewide lockdown that prevents inmates from congregating and viewing the eclipse, cancels visitation in about half of its facilities, and unevenly allows inmates with housing windows the ability to view the eclipse while others are denied that right. What is more, individual officials at Woodbourne refuse to recognize Plaintiffs' sincerely held religious beliefs by relying exclusively on an agency-made calendar of holy days to tell Plaintiffs that their beliefs are not valid. These policies violate Plaintiffs', and other similarly situated individuals', rights to exercise their religions freely under RLUIPA and equally under the U.S. Constitution. With the total eclipse set to occur on Monday, April 8th, immediate injunctive relief is necessary to prevent Defendants from denying Plaintiffs, and others similarly situated, their religious freedoms.

---

[4] On March 27, 2024, Mr. Hudson, Mr. Moses, and Mr. Nunez were informed that their requests, which had previously been denied, were now being forwarded for further review. Still, this action is necessary to guarantee that the Plaintiffs' requests will be granted before April 8, 2024. Even if these decisions are reversed, and Plaintiffs' requests were somehow granted by Woodbourne officials, it is unclear whether the facility would be allowed to let Plaintiffs observe the eclipse in light of Acting Commissioner Muscello's Lockdown Memo.

A.      **A Temporary Restraining Order or Preliminary Injunction Is Required to Uphold Plaintiffs' Statutory and Constitutional Rights.**

Regardless of whether this Court applies the temporary restraining order ("TRO") or preliminary injunction standard, immediate injunctive relief is warranted here because (1) Plaintiffs and the class are likely to succeed on the merits, (2) Plaintiffs and the class face a substantial threat of immediate and irreparable harm for which there is no adequate remedy at law, (3) greater injury will result from denying injunctive relief than granting it (*i.e.*, the balance of equities weighs in Plaintiffs' favor); and (4) injunctive relief will serve the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also, e.g.*, *Aguilar v. Decker*, 482 F. Supp. 3d 139, 145-46 (S.D.N.Y. 2020) ("The standards for granting a TRO and a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure are identical.") (internal quotations omitted) (summarizing law in the Second Circuit).

1.      **Plaintiffs and the Class Are Likely To Succeed on the Merits.**

Plaintiffs bring this action on behalf of themselves and others similarly situated under (1) RLUIPA and (2) 42 U.S.C. § 1983 ("Section 1983"). While they only need to be likely to succeed on the merits under one of these statutes for this Court to issue a TRO and/or preliminary injunction under Fed. R. Civ. P. 65, Plaintiffs are likely to succeed on both.

B.      **RLUIPA**

Plaintiffs and the class are likely to succeed on their RLUIPA claim because DOCCS is imposing a substantial burden on their religious exercise, and it is not doing so to further a compelling government interest via the least restrictive means possible. RLUIPA provides that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1. To succeed on the merits of a RLUIPA claim, a plaintiff must establish that (1) they are residing in or confined to an institution that is part of a program that receives Federal financial assistance, and (2) the program imposes a substantial burden on religious exercise. *Cutter v. Wilkinson*, 544 U.S. 709, 715-16 (2005). If Plaintiffs establish these elements, then the government must show that (3) it is furthering a compelling governmental interest by the least restrictive means possible. *Vision for Children, Inc. v. City of Kingston, N.Y.*, 2017 U.S. Dist. LEXIS 222357, at *58 (NDNY June 7, 2017). Here, Plaintiffs succeed under all three elements.

First, DOCCS can be sued under RLUIPA because it is a state agency that receives Federal financial assistance. *Cutter*, 544 U.S. at 716 n.4 ("Every State . . . accepts federal funding for its prisons."); *see also, e.g.*, *Perez v. New York*, 2020 U.S. Dist. LEXIS 169471, at *30 (W.D.N.Y. Sept. 15, 2020) ("Defendants here concede that DOCCS received federal funds."). Indeed, that others have successfully filed RLUIPA claims against DOCCS is only further evidence that DOCCS falls within the definition of an institution that can be sued under RLUIPA. *E.g.*, *Gibson v. Heary*, 2021 U.S. Dist. LEXIS 41690, at *38-39 (W.D.N.Y. Mar. 5, 2021) (denying motion for summary judgment as to RLUIPA claim against DOCCS).

Second, DOCCS is imposing a substantial burden on Plaintiffs' religious exercise by refusing them the opportunity to gather and observe the eclipse. RLUIPA defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-(5)(7)(A). Moreover, the Act explicitly provides that it "shall be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution." 42 U.S.C. § 2000cc-3(g). In assessing whether a practice constitutes a "religious exercise" within the meaning of RLUIPA, it is irrelevant "whether a particular belief or practice is 'central' to a prisoner's religion," *Cutter*, 544 U.S. at 725

11

n. 13, or whether the religious exercise is mandatory, *Kikumura v. Hurley*, 242 F.3d 950, 960 (10th Cir. 2001). Nor are courts permitted to question the hierarchy of religious beliefs and place greater import on one religion, or one way of practicing a particular religion, than another. *McCreary County v. ACLU*, 545 U.S. 844 (2005) ("The touchstone of our analysis is the principle that the First Amendment mandates governmental neutrality between religion and religion, and between religion and nonreligion.") (internal quotations omitted). Indeed, even atheism is recognized as a religion for the purposes of RLUIPA and the Free Exercise clause of the constitution. *See, e.g.*, *Kaufman v. McCaughtry*, 419 F.3d 678, 682 (7th Cir. 2005) ("The Supreme Court has recognized atheism as equivalent to a 'religion' for purposes of the First Amendment on numerous occasions, most recently in *McCreary County v. ACLU*, [545 U.S. 844] (2005)."). Thus, the relevant inquiry is broader than whether a practice is a key part of a particular religion or whether the professed religion is a traditional one; the only thing that matters is whether the individual seeking protection sincerely believes that the practice is relevant to practicing their religion.

Here, each of the six Plaintiffs sincerely hold that belief. Each Plaintiff has thoroughly explained their sincerely held religious beliefs in declarations submitted with the Complaint. Compl. at ¶¶14-32, Exs. C-I to Complaint. In the face of this subjective evidence of sincere belief, and the corroborating evidence that the solar eclipse holds religious significance in the Plaintiffs' various religions, the named Plaintiffs have done more than enough to prove that these are sincerely held religious beliefs. *See Masterpiece Cakeshop, Ltd. v. Colo. Civ. Rights Comm'n*, 584 U.S. 617, 644 (2018) (Concurrence, Gorsuch, J.) ("That kind of judgmental dismissal of a sincerely held religious belief is, of course, antithetical to the First Amendment . . . . The Constitution protects not just popular religious exercises from the condemnation of civil authorities. It protects them all."); *Johnson v. Doty*, 2019 U.S. Dist. LEXIS 83012, at *10-11 (S.D.N.Y. May 16, 2019)

("Because courts are singularly illequipped to sit in judgment on the verity of an adherent's religious beliefs, . . . an individual claiming violation of free exercise rights need only demonstrate that the beliefs professed are sincerely held and in the individual's own scheme of things, religious.") (internal quotations omitted); *id.* at *10 ("Indeed, even if there were such conflicting allegations [about sincerity], they would present factual disputes to be 'resolved by the factfinder,' not by the Court at the motion-to-dismiss stage.").

Moreover, the unnamed members of the pleaded class also sincerely hold the belief that gathering to view the solar eclipse is a part of practicing their religion. This is because a sincerely held religious belief is, by definition of the class, a prerequisite to joining the class. Compl. at ¶¶57-64.

It is clear that DOCCS' Lockdown Memo and individual employees' refusal to allow Plaintiffs to view the eclipse is placing a substantial burden on their religious exercise. If DOCCS is allowed to continue its lockdown plan, then none of the Plaintiffs or similarly situated people will be able to gather and view the eclipse. And by the time the next total solar eclipse passes over New York State, it will be 2079 and most of them will no longer be living. Byrd. Decl., Ex. 2. Courts have found a substantial burden in similar circumstances, and even for far less. *E.g.*, *Coronel v. Paul*, 316 F. Supp. 2d 868, 880 (D. Ariz. 2004) ("[S]tate action substantially burdens the exercise of religion within the meaning of the RLUIPA when it prevents a religious adherent from engaging in conduct both important to the adherent and motivated by sincere religious belief."); *id.* at 882 (denying Pagan prisoner permission to attend Yaqui Indian and Native Hawaiian religious services may constitute substantial burden); *Salahuddin v. Goord*, 467 F.3d 263, 275-79 (2d Cir. 2006) (holding each of the following is a substantial burden: (1) requiring Sunni Muslim prisoner to pray and fast for Ramadan jointly with Shiite Muslims; (2) denying

Muslim prisoner access to religious services and religious meals while in "keeplock;" and (3) denying Muslim prisoner attendance at Ramadan meals and services on days when he used the law library); *Murphy v. Missouri Dep't of Corrections*, 372 F.3d 979, 988 (8th Cir.), cert. denied, 125 S. Ct. 501 (2004) (holding denial of congregate religious worship may be a substantial burden).

Finally, the DOCCS lockdown policy is not furthering a compelling government interest by the least restrictive means possible. First, it is unclear what compelling government interest DOCCS is trying to achieve here. While the Lockdown Memo mentions "safety" as a concern, it is not clear whose safety DOCCS is concerned with. If the concern is that the solar eclipse will cause a few minutes of darkness and thus lead to a security risk, then that is hardly cause for alarm. DOCCS deals with darkness every single night when the sun goes down. Moreover, prison yards have lights. If the concern is that the incarcerated population will cause some disturbance, that concern exists any time there is a group of incarcerated persons in one place. Such gatherings happen every day, including in the prison yard during regular recreation time. Nor is prisoner safety from the eclipse a reason not to let those with religious reasons observe the eclipse. None of these speculative reasons for the lockdown constitute a compelling government interest. Indeed, DOCCS did not impose a lockdown in 2017 during the partial solar eclipse in New York State.

But even if they did, DOCCS is certainly not using the least restrictive means to further that government interest, as it is required to do. Shutting every inmate away in a cell during an event that many consider holy is incredibly restrictive – perhaps even the most restrictive response one could imagine. Rather than a statewide lockdown, DOCCS could have allowed inmates to file written requests documenting their religious reasons to view the eclipse and granted them on an individual basis. This would ensure that only those who have a sincerely held religious belief are

in the prison yard during the eclipse on April 8, 2024, thereby addressing DOCCS thinly veiled "security" concern while still being less restrictive than a blanket ban on watching the eclipse.

Thus, Plaintiffs and the potential class have a likelihood of success on the merits for their RLUIPA claims.

### C.    Section 1983

Section 1983 allows Plaintiffs to bring claims against Defendant for violating the U.S. Constitution. *E.g.*, *West v. Atkins*, 487 U.S. 42, 48 (1988). Here, Plaintiffs do so under the First and Fourteenth Amendments. Compl. at ¶¶70-72. Plaintiffs are likely to succeed on the merits of their constitutional claim under the Free Exercise Clause of the First Amendment for the same reasons as they are likely to succeed under RLUIPA. Separately, Plaintiffs are likely to succeed on their Equal Protection claims under the Fourteenth Amendment.

The Equal Protection Clause guarantees that all incarcerated persons receive the same treatment regardless of their religion. *Bowens v. Smith*, 2012 U.S. Dist. LEXIS 183949 at *23-26 (N.D.N.Y. Dec. 7, 2012). That right has been violated here. DOCCS' policy of creating a religious event calendar and then only allowing Plaintiffs to practice their religion on days listed on the calendar necessarily creates unequal treatment under the law based on religion. Well-known religions in the United States, like Catholicism, are likely to have a more accurate representation of holy days in the agency-created calendar than religions that are not as well understood in this country, such as Santeria. And even for the better-known religions, the calendar policy allows DOCCS to be the arbiter of what constitutes a holy day for any particular religion.

### 2.    Plaintiffs and the Class Face a Substantial Threat of Immediate and Irreparable Harm for Which There Is No Adequate Remedy at Law.

Courts have held that irreparable harm is necessarily met in religious exercise cases where a plaintiff has established likelihood of success on the merits. *E.g.*, *Dowl v. Williams*, 2018 U.S.

Dist. LEXIS 87796, at *6 (D. Alaska May 25, 2018) ("Because plaintiffs have shown that they are likely to succeed on one of their RLUIPA claims, they have met the other requirements for a TRO."). This Court should do so too. But regardless of whether this element is met automatically, it is clear on these facts that there is a substantial threat of immediate and irreparable harm. After Monday, April 8th, the next total solar eclipse to cross over New York will be in 2079. If immediate injunctive relief is not granted and the Plaintiffs are not allowed to view the eclipse, they will all but certainly never be able to practice their faith in this way. Such an outcome is an irreparable harm that no amount of damages or other legal remedy could cure.

### 3.   Greater Injury Will Result From Denying Injunctive Relief Than From Granting It.

Injunctive relief is also appropriate here because greater harm will come from denying injunctive relief than will come from granting it. If injunctive relief is granted and DOCCS is required to allow religious observers the chance to congregate and view the eclipse, there is no evidence that there would be any harm done. To the contrary, if injunctive relief is denied, there is an irreparable harm that none of the Plaintiffs or class members would likely be able to practice their religions in the same way again. This harm outweighs whatever unlikely and vague "security" risk there may be by allowing inmates to view the eclipse.

### 4.   Immediate Injunctive Relief Will Not Disserve the Public Interest.

For much the same reasons, granting injunctive relief in this case will not disserve the public interest. To the contrary, allowing Plaintiffs and the class to observe the eclipse will only further the carceral system's goal of rehabilitation. These inmates are asking for the most human of things: to gather and celebrate something that is greater than themselves. It is meant to be a time of reflection and redemption. Two worthy causes for individuals who are serving time and will hopefully one day be given the opportunity to re-join society. And when they do re-enter society,

having this religious experience will be far more helpful to re-entry than the cynicism that necessarily comes with having their religious freedoms denied.

### 5. The Security Requirement Should Be Waived.

This Court should exercise its discretion to waive Rule 65(c)'s bond requirement. Such a decision is warranted where, as here, Plaintiffs are indigent and/or incarcerated. *See, e.g.*, *Rivera v. Town of Huntington Hous. Auth.*, 2012 U.S. Dist. LEXIS 74267 at *20-21 (E.D.N.Y. May 29, 2012); *Rivera v. Dyett*, 1992 U.S. Dist. LEXIS 13464 at *38-39 (S.D.N.Y. Sep. 9, 1992).

### D. Plaintiffs Respectfully Request Expedited Treatment of Their Complaint.

Plaintiffs respectfully request that this Court expedite their motion for immediate injunctive relief under Fed. R. Civ. P. 65. The solar eclipse is schedule to occur in just ten days. If this issue is not resolved before then, Plaintiffs and others similarly situated will lose the opportunity to congregate and observe this eclipse in accordance with their sincerely held religious beliefs—even if this Court were later to find in their favor. Expedited consideration is warranted under these circumstances.

## V. <u>PRAYER FOR RELIEF</u>

For these reasons, Plaintiffs respectfully request that the Court grant this Motion and enter immediate injunctive relief under Fed. R. Civ. P. 65, ordering DOCCS to **(A)** rescind its Lockdown Memo; **(B)** inform all persons within its control that the Lockdown Memo has been rescinded and that they may congregate and view the eclipse if they articulate sincerely held religious beliefs that observing the eclipse is a part of practicing their religion; **(C)** allow Plaintiffs and others similarly situated to congregate and observe the eclipse; and **(D)** provide eclipse glasses to those who are viewing the eclipse, for the limited time in which the eclipse is scheduled to occur at their respective facilities.

Dated: March 29, 2024

New York, New York

_____/s/ Madeline E. Byrd_____

Christopher L. McArdle, Esq.
Sharon Steinerman, Esq.
Madeline E. Byrd, Esq.
ALSTON & BIRD LLP
90 Park Avenue
New York, NY 10016
(212) 210-9542
chris.mcardle@alston.com
sharon.steinerman@alston.com
maddy.byrd@alston.com
*Attorneys for Plaintiffs and Others
Similarly Situated*

18

**<u>Certificate of Service</u>**

I, Madeline E. Byrd, hereby certify that on Friday, March 29, 2024, counsel for Plaintiffs

caused this motion to be served on the DOCCS Office of Counsel.

/s/ Madeline E. Byrd

_____

Madeline E. Byrd

## **Certificate of Conference**

I, Madeline E. Byrd, hereby certify that counsel for Plaintiffs called the DOCCS Office of Counsel on Thursday, March 28, 2024 to inform the agency that Plaintiffs would be filing the Complaint and Emergency Motion for Injunctive Relief on Friday, March 29, 2024. The phone operator at DOCCS requested counsel to email the notice. Counsel for Plaintiffs sent the email on Thursday, March 28, 2024 and, as of 11:41am on March 29, 2024, has not heard back.

/s/ Madeline E. Byrd

_____

Madeline E. Byrd